# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | | |
|---|---|---|
| JEFFREY CLOSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-5007-CV-SW-DGK-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Jeffrey Close seeks judicial review of the Commissioner's denial of his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423, and his application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Plaintiff has exhausted all of his administrative remedies and judicial review is now appropriate under 42 U.S.C. §§ 405(g) and 1383(c)(3).

After careful review of the record, the Court finds the administrative law judge's decision is supported by substantial evidence on the record, and the Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

### Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported

by substantial evidence on the record as a whole. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's conclusion. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court may not reverse the Commissioner's decision as long as substantial evidence in the records supports this decision, even if substantial evidence in the record also supports a different result, or if the court might have decided the case differently were it the initial finder of fact. *Id.*

**Analysis**

Generally a federal court's review of the Commissioner's decision to deny an application for disability insurance benefits or supplemental social security income is restricted to determining whether the Commissioner's decision is consistent with the Social Security Act, the regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. In determining whether a claimant is disabled, the Commissioner follows a five-step evaluation process.[1]

Close suggests he became disabled on June 28, 2002, due to depression and anxiety, and that the administrative law judge ("ALJ") committed three reversible errors: (1) By applying an

---

[1] The five-step process works as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

2

incorrect standard at step two of the determination process and finding that Close's carpal tunnel syndrome was not a severe impairment; (2) by completing an arbitrary and vague residual functional capacity ("RFC"), and by failing to reflect in the RFC adequate limitations for Close's depressive disorder and wrist impairment; and (3) by disregarding Close's statements regarding his physical and mental limitations without conducting an explicit credibility analysis as required by *Polaski* and the regulations. The Court finds no merit to these arguments.

**A. The ALJ did not err in finding that Plaintiff's carpal tunnel syndrome was not a severe impairment.**

At step two of the determination process the ALJ must determine whether the claimant has a "severe" impairment. A severe impairment is an impairment, or combination of impairments, which significantly limits a claimant's physical or mental ability to perform basic work activities without regard to age, education, or work experience. 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c) and 416.921(a). The plaintiff bears the burden of establishing that he has a severe impairment. *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996). Objective medical evidence must confirm that an impairment is severe. SSR96-3p. "A diagnosis alone is an insufficient basis for a finding that an impairment is severe." *Wilber v. Astrue*, 09-CV-04235, 2010 WL 2772313, at *9 (W.D. Mo. July 12, 2010). Instead, "the severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *Id*. And unless an impairment is expected to result in death, it must have lasted or be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909. But "'only those claimants with slight abnormalities that do not significantly limit any "basic work activity" can be denied benefits without undertaking' the subsequent steps of the sequential

evaluation process." *Brown v. Bowen*, 827 F.2d 311, 312 (8th Cir. 1987) (quoting *Bowen v. Yucker*, 482 U.S. 137, 158 (1987)).

In the present case the evidence on the record does not support a finding that Plaintiff's carpal tunnel syndrome resulted in significant functional limitations, so the ALJ's finding that it was not a severe impairment is supported by the record. The only medical evidence related to carpal tunnel syndrome consists of a June 2002 diagnosis from Dr. David Paul. After receiving the diagnosis, however, Plaintiff did not seek any treatment, did not take any pain medication, and did not attend any physical or occupational therapy. Indeed, there is no indication that he even mentioned his carpal tunnel syndrome to any subsequent treatment providers. Arguing in the alternative, Plaintiff suggests that the ALJ should have ordered a consultative examination. The plaintiff, however, bears the burden of establishing his impairment. And here substantial evidence on the record supports the ALJ's determination that Close's carpal tunnel syndrome was not severe, thus the ALJ did not err by failing to order a consultative examination.

**B.     The ALJ properly assessed Plaintiff's RFC.**

Next, Plaintiff argues that the ALJ erred by failing to link Plaintiff's RFC to the medical record and by failing to include any limitations related to Plaintiff's carpal tunnel syndrome. A claimant's RFC represents the most that he can do despite the combined effects of his credible limitations. 20 C.F.R. §§ 404.1545, 416.945. Although RFC is a "medical question," RFC findings are not based solely on medical evidence but on all the evidence in the record, and the record must include some medical evidence that supports the RFC finding. *Dykes v. Apfel*, 223 F.3d 865, 866–67 (8th Cir. 2000). It is the Plaintiff's burden, not the Commissioner's, to prove his RFC. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

Here the ALJ found that Plaintiff was moderately limited in his ability to function socially and in his ability to maintain concentration, persistence, and pace. The ALJ found that the Plaintiff had the RFC to perform a full range of work at all exertional levels but with nonexertional limitations of performing only simple routine tasks involving no more than one or two steps, superficial contact with co-workers and supervisors, and no contact with the general public. The ALJ linked these moderate limitations to the medical record by noting that Close repeatedly denied having depression or anxiety, repeatedly reported that he was doing "good" or "alright," and that his treatment providers observed he had a stable mood and affect, and that he was pleasant, friendly, and talkative. The ALJ also noted medication was effective in treating his mental impairments, and that Close socialized with people on a regular basis through church attendance and twelve-step meetings, and he reported to his treatment providers at Ozark Center that he enjoyed social activities.

With respect to Plaintiff's carpal tunnel syndrome, as noted above, the ALJ discussed the lack of any medical evidence (such as using pain medication, seeking or receiving follow-up treatment, etc.), which would leave one to believe Close suffered functional limitations as a result of carpal tunnel syndrome. The ALJ also noted that his carpal tunnel syndrome did not prevent Close from completing the forms he used in the disability application process, and that Close picked up cans to earn extra income.

In short, the Court finds the ALJ fully considered all of Plaintiff's impairments, including non-severe impairments, in the RFC assessment, and the ALJ properly determined that Plaintiff's carpal tunnel syndrome did not impose any work-related limitations.

**C.    The ALJ properly assessed the credibility of Plaintiff's subjective complaints.**

Finally, Plaintiff argues the ALJ disregarded statements concerning his physical and mental limitations without conducting an explicit credibility analysis as required by *Polaski* and the regulations. Plaintiff contends the ALJ "merely paid lip service to the *Polaski* factors," failed to identify any specific evidence which contradicted his testimony, and instead used a remote felony conviction to discredit him.

At the outset the Court notes that credibility questions concerning a plaintiff's subjective testimony are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). To analyze a claimant's subjective complaints, an ALJ considers the entire record, including the claimant's medical records, statements by the claimant and third parties, and the *Polaski* factors, such as: 1) the claimants daily activities; 2) the duration, frequency, and intensity of pain; 3) dosage, effectiveness, and side effects of medication; 4) precipitating and aggravating factors; and 5) functional restrictions. 20 C.F.R. § 404.1529 (incorporating *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

In this case, the ALJ found that Plaintiff's complaints were not credible to the extent they exceeded the limitations found in the RFC. In so doing, the ALJ specifically identified the evidence that was inconsistent with Close's subjective complaints, including the disparity between his allegations and the objective medical evidence, such as treatment records which indicated medication was effective for treating his mental impairments; Plaintiff's lack of treatment for his carpal tunnel syndrome; repeated statements by Plaintiff that he was "alright" or "doing good"; statements that he socialized with other people on a regular basis at church and at twelve-step meetings, and statements to his treatment provider at Ozark Center that he enjoyed social activities.

There is also no merit to the suggestion that the ALJ used a remote felony conviction to discredit Plaintiff. The ALJ did not consider Close's felony conviction in evaluating his credibility, rather he observed that the felony conviction, and not any health problems, was the reason Close could not find a job. The ALJ wrote, "It is apparent to the undersigned from Mr. Close's testimony at the hearing that his main problem in finding a real job is that he has a felony conviction."

Because the ALJ articulated the inconsistencies upon which he relied in discrediting Plaintiff's testimony regarding his subjective complaints, and because substantial evidence on the record as a whole supports this finding, the Court finds no error in how the ALJ assessed Close's credibility.

## Conclusion

After careful examination of the record as a whole, the Court finds the Commissioner's determination is supported by substantial evidence on the record, and the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  August 12, 2011                    /s/ Greg Kays
                                          GREG KAYS, JUDGE
                                          UNITED STATES DISTRICT COURT